# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Victoria Balentine, Individually and : <br>
as Administratrix of the Estate of : <br>
Edwin Omar Medina-Flores, deceased, : <br>
                     Appellant : <br>
                             : <br>
           v. : <br>
                             : <br>
Chester Water Authority, : <br>
Wyatt A. Roland, Michael W. Roland :   No. 1859 C.D. 2015 <br>
and Charles Matthews :   Argued: May 13, 2016

BEFORE:   HONORABLE ROBERT SIMPSON, Judge <br>
                HONORABLE ANNE E. COVEY, Judge <br>
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION BY <br>
JUDGE COVEY                                        FILED: June 3, 2016

Victoria Balentine, individually and as administratrix of the estate of Edwin Omar Medina-Flores (Flores), deceased (Balentine), appeals from the Delaware County Common Pleas Court's (trial court) February 5, 2015 order granting the Chester Water Authority's (CWA) and Charles Mathues'[1] (Mathues) (collectively, Authority) summary judgment motion (Motion), and dismissing all claims against the Authority. There are two issues before the Court: (1) whether the trial court erred by finding that the motor vehicle exception to the act commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act)[2] did not apply; and (2) whether the trial court erred by finding that the traffic control device exception to the Tort Claims Act did not apply.

---

[1] According to the trial court's order, "Mathues" is improperly spelled "Matthews" in the caption. *See* Trial Ct. February 5, 2015 Order.

[2] 42 Pa.C.S. §§ 8541–42.

On November 8, 2013, Balentine filed a complaint against the Authority, Michael Roland and Wyatt A. Roland (Roland) (collectively, Rolands), alleging that Mathues negligently parked a CWA truck which Roland carelessly, negligently and recklessly struck causing the CWA truck to pin Flores, resulting in his death.[3]  On December 16, 2014, the Authority filed the Motion asserting immunity from liability under the Tort Claims Act.  On January 15, 2015, Balentine responded that her claims fall within exceptions to governmental immunity.  The trial court held a hearing on February 4, 2015 and, on February 5, 2015, the trial court granted the Authority's Motion and dismissed all claims against it.[4]  On September 25, 2015, Balentine appealed to this Court.[5]

Initially, the Tort Claims Act provides: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any

---

[3] Michael Roland owned the vehicle that Roland was driving at the time of the incident.

[4] On March 9, 2015, Balentine filed a Notice of Appeal with the Pennsylvania Superior Court.  The appeal was transferred to this Court.  By July 20, 2015 order, the appeal was quashed because of claims pending against the Rolands.  By September 2, 2015, Balentine agreed to dismiss the claims against the Rolands, provided that if this Court remanded the action to the trial court, the stipulation would not affect any cross-claims the Authority had against the Rolands.

[5]
> This Court's review of an order granting summary judgment is limited to determining whether the trial court committed an error of law or abuse of discretion.  *Metro*[.] *Edison Co. v. Reading Area Water* [*Auth.*]*,* 937 A.2d 1173, 1174 n. 2 (Pa. Cmwlth. 2007) . . . .  The standard for granting summary judgment is as follows:
>
> > Summary judgment is properly granted when, viewing the record in a light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.
>
> *Id.* (citation omitted).

*WeCare Organics, LLC v. Zoning Hearing Bd. of Schuylkill Cnty.*, 954 A.2d 684, 688 n.4 (Pa. Cmwlth. 2008).

injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. The relevant exceptions to governmental immunity are provided in Section 8542 of the Tort Claims Act:

**(a) Liability imposed.--**A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under [S]ection 8541 [of the Tort Claims Act] (relating to governmental immunity generally) or [S]ection 8546 [of the Tort Claims Act] (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, 'negligent acts' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

**(b) Acts which may impose liability.--**The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(1) *Vehicle liability.--***The operation of any motor vehicle in the possession or control of the local agency** . . . . As used in this paragraph, 'motor vehicle' means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

. . . .

(4) *Trees, traffic controls and street lighting.--***A dangerous condition of** trees, traffic signs, lights or other **traffic controls**, street lights or street lighting systems **under the care, custody or control of the local agency**, except that the claimant to recover must establish that the dangerous

3

condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542 (text emphasis added). "In accordance with the General Assembly's expressed intent to insulate local agencies from tort liabilities, the statutory language of the exceptions to governmental immunity contained in Subsection 8542(b) of the Tort Claims Act must be construed narrowly; immunity remains the rule." *Gale v. City of Phila.*, 86 A.3d 318, 320 (Pa. Cmwlth. 2014).

Balentine first argues that the trial court erred by determining that the motor vehicle exception to the Tort Claims Act did not apply. Specifically, the trial court determined that the exception requires that the *Authority's* negligence, rather than involuntary movement of the government vehicle by a third party, cause the subject vehicle's movement and the resulting injuries. Because no Pennsylvania case law addresses whether involuntary movement of a vehicle constitutes operation for purposes of the governmental immunity exception, this is a matter of first impression.

Balentine cites to *Cacchione v. Wieczorek*, 674 A.2d 773 (Pa. Cmwlth. 1996); *Sonnenberg v. Erie Metropolitan Transit Authority*, 586 A.2d 1026 (Pa. Cmwlth. 1991); and *Mickle v. City of Philadelphia*, 707 A.2d 1124 (Pa. 1998), to support her position that a stopped vehicle can still be considered in "operation" for purposes of the motor vehicle exception to governmental immunity. The Authority, however, cites to *Love v. City of Philadelphia*, 543 A.2d 531 (Pa. 1988); *Pennsylvania State Police v. Robinson*, 554 A.2d 172 (Pa. Cmwlth. 1989); *First National Bank of Pennsylvania v. Department of Transportation*, 609 A.2d 911 (Pa. Cmwlth. 1992); and *City of Philadelphia v. Melendez*, 627 A.2d 234 (Pa. Cmwlth. 1993), to support their position that a stopped vehicle is not in "operation" for

purposes of the governmental immunity exception. We begin by examining each of the cited cases.

In *Cacchione*, homeowners brought an action against the city of Erie to recover damages caused when a city truck, parked with the engine running, rolled backwards and crashed into their home. The trial court denied the city's motion for judgment on the pleadings, and the city appealed. This Court held that the allegations were sufficient to establish that the truck was in "operation" at the time of injury under the motor vehicle exception to governmental immunity because it was essentially alleged that **the truck was not properly parked** at the time of the collision.[6] Specifically, the *Cacchione* Court held: "[P]arking is unquestionably an act normally related to the operation of a vehicle. The movement of the vehicle ceases, and the operation of the vehicle terminates, at the moment the vehicle is *properly* parked." *Id.* at 776. Thus, the *Cacchione* Court determined that the motor vehicle exception to governmental immunity applied.

In *Sonnenberg*, a passenger brought an action against a metropolitan transit authority to recover for injuries sustained when she was struck by a bus door. The trial court granted summary judgment for the authority, and the passenger appealed. This Court held that the bus, although stopped, was still in "operation" at the time of the passenger's injuries, within the meaning of the sovereign immunity exception for "operation" of a motor vehicle by a local agency. The *Sonnenberg* Court expressly ruled: "The movement of parts of a vehicle, or an attachment to a vehicle, is sufficient to constitute 'operation.' Moreover, the bus driver's closing of the bus doors is an act normally related to the 'operation' of a bus." *Id.* at 1028. Accordingly, the *Sonnenberg* Court held that the motor vehicle exception to the Tort Claims Act applied.

---

[6] The homeowners averred that the driver failed to properly set the handbrake and block the wheels against the curb to prevent the truck from rolling backwards in the event of a brake failure.

Finally, the *Mickle* Court addressed a slightly different aspect concerning the "operation" of a vehicle. In *Mickle*, a patient sued the city of Philadelphia, alleging that he was severely injured when the fire department rescue van in which he was being transported lost its wheels while en route to the hospital. The trial court granted the patient's motion for summary judgment. The city appealed. This Court affirmed, and the city appealed to our Supreme Court which held that the city's negligent maintenance and repair of the fire department's rescue van was "the operation of a motor vehicle" within the meaning of the motor vehicle exception to governmental immunity. *Id.* at 1126. The *Mickle* Court stated:

> Negligence related to the **operation of a vehicle** encompasses not only how a person drives but also whether he should be driving a particular vehicle in the first place. The motor vehicle exception does not say that liability may be imposed only where the operator's manner of driving is negligent. Rather, it requires that the injury is caused by a negligent act with respect to the operation of a motor vehicle.

*Id.* (emphasis added). Hence, the *Mickle* Court concluded that the motor vehicle exception applied in that case.

Contrary to the above-cited cases, the Pennsylvania Supreme Court in *Love,* held:

> [**T**]**o operate something means to actually put it in motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are** *not* **the same as actually operating that vehicle**. Thus, according to the common and approved usage of the word 'operation', [a] van [that] was not in operation at the time of [the] accident[] [cannot fall within the exception.] Getting into or alighting from a vehicle are merely acts ancillary to the actual operation of that vehicle.

*Id.* at 533 (emphasis added). Consequently, in *Robinson*, wherein a motorist who was injured after he stopped to assist a state trooper at an accident scene brought an action

6

against the trooper and the state police, this Court determined that the accident did not arise out of the "operation" of the police car within the meaning of the vehicle liability exception to sovereign immunity. Rather, the police car was stopped and the motorist was injured by another car while standing at the trunk of the trooper's car attempting to get flares. The *Robinson* Court based its decision on *Love*, stating: "[M]erely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are *not* the same as actually operating that vehicle." *Robinson*, 554 A.2d at 174 (quoting *Love*, 543 A.2d at 533). The Court explained: "[Although], both cases involved placement of a parked vehicle, and, in each case, the placement was one which could be found to have a causal relationship to the injury[,]" the motor vehicle exception to governmental immunity did not apply. *Id.*

Similarly, in *First National Bank*, a motor vehicle passenger was fatally injured when his car collided with a Department of Transportation (DOT) vehicle which was parked, albeit running and with flashers activated, on or near the right-hand berm of the road. The *First National Bank* Court determined:

> [T]he DOT vehicle was temporarily parked on the side of the road because DOT employees intended to place delineators on an adjacent highway. The DOT vehicle was not temporarily stopped in traffic. Moreover, [the d]ecedent's injuries were not caused by any moving part of the DOT vehicle. Therefore, the DOT vehicle was not in operation for purposes of imposing liability on DOT under the motor vehicle exception to sovereign immunity.

*Id.* at 914. Based on that reasoning, the Court held the governmental immunity exception did not apply.

Lastly, in *Melendez*, a driver brought an action against the city of Philadelphia for injuries she suffered in a vehicle crash allegedly caused by a negligently parked city vehicle. The trial court denied the city's motion for summary judgment. The city appealed. This Court held that the trial court erred in denying the

7

city's summary judgment motion because "the vehicle was already parked at the time of the collision. Therefore, the vehicle was no longer in operation and the motor vehicle exception to governmental immunity does not apply." *Id.* at 236.

In the case sub judice, although the CWA's truck was running and had its strobe light on, it was parked at the time of the collision. Roland's car hit the CWA truck, forcing it to involuntarily move forward and fatally injure Flores. After reviewing the above-cited cases, we conclude that the instant action is more aligned with the stare decisis presented by the Authority than those offered by Balentine. Here, there was no allegation that the CWA truck was not fully parked at the time, that the injury was caused by the voluntary movement of the truck's parts or an attachment to the truck, or that there was any negligent maintenance or repair to the truck. *See Mickle; Cacchione*; *Sonnenberg.* Because the CWA truck was parked at the time of the collision, we are constrained to conclude as a matter of law, that it was no longer in operation when the accident occurred. *See Love; Melendez; First National Bank; Robinson.* Thus, we hold that involuntary movement of a vehicle does not constitute "operation" for purposes of the motor vehicle exception to governmental immunity. Accordingly, the trial court did not err by determining that the motor vehicle exception to the Tort Claims Act did not apply.

Balentine next contends that the trial court erred by finding that the traffic control device exception to the Tort Claims Act did not apply. Specifically, Balentine maintains that because Mathues changed the traffic pattern by illegally parking his truck with its strobe light flashing, the Authority failed to properly maintain a traffic device and, thus, the exception to governmental immunity applies. Because a motor vehicle is not a traffic control device, we disagree.

8

This Court has explained relative to school buses:

> A 'traffic-control signal' is defined in Section 102 of the Motor Vehicle Code[, 75 Pa.C.S. § 102,] as '[a] device, whether manually, electrically or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed.' A school bus is defined as 'a motor vehicle which . . . [is designed to carry 11 passengers or more, including the driver] . . . .' A school bus does, at times, direct traffic to stop at certain times, as described in Section 3345 of the Motor Vehicle Code[, 75 Pa.C.S. § 3345]. However, it would be difficult to characterize a school bus as 'a device' by which traffic is alternately directed to stop or proceed. A school bus is a motor vehicle to which the lights are affixed. The lights are a part of the vehicle and not a traffic control signal.

*Aberant v. Wilkes-Barre Area Sch. Dist.*, 492 A.2d 1186, 1188 (Pa. Cmwlth. 1985) (footnotes omitted). We apply the same analysis to a parked CWA truck with an activated strobe light. Because a CWA truck is not "'a device' by which traffic is alternately directed to stop or proceed[,]" we are constrained to hold that the traffic control exception to governmental immunity does not apply. *Id.* Accordingly, the trial court did not err by determining that the traffic control device exception to the Tort Claims Act did not apply.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Victoria Balentine, Individually and   :
as Administratrix of the Estate of    :
Edwin Omar Medina-Flores, deceased, :
                     Appellant   :
                                :
              v.                :
                                :
Chester Water Authority,         :
Wyatt A. Roland, Michael W. Roland  :   No. 1859 C.D. 2015
and Charles Matthews         :

## O R D E R

       AND NOW, this 3rd day of June, 2016, the Delaware County Common Pleas Court's February 5, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Victoria Balentine, Individually : 
and as Administratrix of the Estate of : No. 1859 C.D. 2015
Edwin Omar Medina-Flores, deceased, : Argued: May 13, 2016
 : 
                    Appellant : 
 : 
            v. : 
 : 
Chester Water Authority, Wyatt : 
A. Roland, Michael W. Roland and : 
Charles Matthews : 


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


CONCURRING AND DISSENTING OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED: June 3, 2016


        I respectfully concur in part and dissent in part. I agree with the majority that the traffic control device exception to the Political Subdivision Tort Claims Act (Tort Claims Act)[1] does not apply to the facts of this case. However, I would conclude that Charles Mathues' vehicle was in operation at the time it struck and killed Edwin Omar Medina-Flores and that the trial court erred in determining that the vehicle liability exception to the Tort Claims Act does not apply. Accordingly, I would reverse the trial court's order granting summary judgment.

---

[1] 42 Pa. C.S. §§8541-8542.

Medina-Flores was a contractor for Metra Industries (Metra), which Chester Water Authority (CWA) hired to rehabilitate a section of its water distribution system. The project consisted of draining and cleaning the main pipeline. A temporary pipeline was installed above ground, and each customer's meter was disconnected from the underground pipeline to the temporary, above-ground pipeline.

Mathues was employed by CWA as an inspector. His duties included inspecting work done by Metra employees to ensure that it complied with CWA's specifications. On hundreds of occasions, Mathues left his vehicle on the roadway or on the shoulder of the roadway while completing his inspections. (Mathues Dep., 11/11/14, at 37.) By doing so, Mathues' vehicle would sometimes impede the flow of traffic. (*Id.* at 40.)

Mathues testified that on the day of the accident, he drove his CWA truck to Kerlin Street, which has one travel lane in each direction. Mathues testified that there is no parking lane on Kerlin Street and that parking on the roadway would be illegal. (*Id.* at 50.) Medina-Flores was in a hole working on the pipeline. Mathues testified that he stopped the CWA truck approximately 10 to 15 feet before the hole, got out of the truck, and left the engine running. (*Id.* at 62, 64.)

Carlos Bonilla, who was present at the site, testified that 80% of the CWA truck was in the roadway. (Bonilla Dep., 11/3/14, at 58.) William Pugh was also present at the accident site. Pugh testified that the CWA truck was entirely in the roadway. (Pugh Dep., 11/3/14, at 57.)

Bonilla testified that a car driven by a third party struck the rear of the CWA truck. The force of the crash caused the CWA truck to move forward, pinning Medina-Flores in the hole under the CWA truck. The movement of the CWA vehicle caused massive injuries to Medina-Flores, resulting in his death.

Under 42 Pa. C.S. §8542(b)(1), the defense of sovereign immunity is not applicable for damages caused by "[t]he operation of any motor vehicle in the possession or control of the local agency." The majority concludes that "[b]ecause the CWA truck was parked at the time of the collision, we are constrained to conclude as a matter of law[] that it was no longer in operation when the accident occurred." (Maj. Op. at 8.) I disagree.

For the vehicle liability exception to apply, the vehicle must be in operation or moving. *Bottoms v. Southeastern Pennsylvania Transportation Authority*, 805 A.2d 47, 49-50 (Pa. Cmwlth. 2002.) "Where an injury results from movement of part of the vehicle, this [c]ourt has found the vehicle liability exception to apply." *Id.* at 50. "However, we do not require . . . a driver in the seat in order for a vehicle to be 'in operation.'" *Id.*

Here, the movement of the CWA truck caused Medina-Flores' injuries and resulting death. Specifically, according to the deposition testimony of Mathues, Bonilla, and Pugh, the CWA truck moved into Medina-Flores' body and crushed him. (*See* Mathues Dep., 11/11/14, at 73; Bonilla Dep., 11/3/14, at 65; Pugh Dep., 11/3/14, at 64.)

This case is similar to *Cacchione v. Wieczorek*, 674 A.2d 773, 774 (Pa. Cmwlth. 1996), wherein plaintiffs suffered injuries when a city truck crashed into their home. The truck driver had parked the truck in front of the home, left the engine running, failed to set the handbrake, and failed to block the wheels against the curb. *Id.* at 774. The plaintiffs alleged that their injuries were "caused by the movement of the *entire* truck, when the truck rolled backwards and crashed into their home." *Id.* at 775. This court determined that "[w]here, as here, the *injury was caused by the movement of the entire vehicle . . .* this [c]ourt has consistently held that the vehicle was in operation at the time of the injury for the purpose of deciding whether the case falls within the vehicle exception." *Id.* (emphasis added).

The cases, relied on by the majority, are distinguishable because in those cases, the injuries were *not* caused by the movement of the government vehicle. *See Love v. City of Philadelphia*, 543 A.2d 531, 531 (Pa. 1988) (passenger injured when she fell getting out of the city van); *City of Philadelphia v. Melendez*, 627 A.2d 234, 235 (Pa. Cmwlth. 1993) (motorist who collided with another motorist alleged that city-owned vehicle was illegally parked and obstructed her view); *First National Bank of Pennsylvania v. Department of Transportation*, 609 A.2d 911, 914 (Pa. Cmwlth. 1992) ("no part of [the Pennsylvania Department of Transportation's] vehicle caused [the d]ecedent's fatal injuries"); *Pennsylvania State Police v. Robinson*, 554 A.2d 172, 173 (Pa. Cmwlth. 1989) (motorist struck and injured by another motorist while standing behind police car).

Additionally, I am troubled by the majority's "hold[ing] that *involuntary* movement of a vehicle does not constitute 'operation' for purposes of the motor

vehicle exception to governmental immunity." (Maj. Op. at 8 (emphasis added).) Whether the movement is voluntary or involuntary is irrelevant. Unlike the majority, the statute does not qualify the word "operation."

If the movement of the vehicle causes the injury, the vehicle is deemed to be in operation. Here, Medina-Flores' injuries and death were caused by the moving CWA truck. Therefore, the CWA truck was in operation, and the trial court erred in determining that the vehicle liability exception to the Tort Claims Act does not apply.

Accordingly, I concur in part and dissent in part.

_____
ROCHELLE S. FRIEDMAN, Senior Judge