**[J-59-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| VICTORIA BALENTINE, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF EDWIN OMAR MEDINA-FLORES, DECEASED, | : : : : : | No. 119 MAP 2016 Appeal from the Order of the Commonwealth Court dated June 3, 2016 at No. 1859 CD 2015 Affirming the |
| Appellant | : : : | Order of the Delaware County Court of Common Pleas, Civil Division, dated September 2, 2015 at No. 13-11179. |
| v. | : : | ARGUED: September 13, 2017 |
| | : | |
| CHESTER WATER AUTHORITY, WYATT A. ROLAND, MICHAEL W. ROLAND AND CHARLES MATTHEWS, | : : : : : | |
| Appellees | : | |


**OPINION**


**JUSTICE MUNDY**                                        **DECIDED: August 21, 2018**

We granted allowance of appeal in this matter to consider whether the Commonwealth Court erred in holding that the involuntary movement of a vehicle does not constitute operation of a motor vehicle for purposes of the vehicle liability exception to governmental immunity under 42 Pa.C.S. § 8542(b)(1). As explained herein, because we determine that movement of a vehicle, whether voluntary or involuntary, is not required by the statutory language of the vehicle liability exception, we reverse the order of the Commonwealth Court thereby allowing this matter to proceed in the trial court.

Appellant, Victoria Balentine, is the widow of Edwin Omar Medina-Flores, a contractor for Metra Industries (Metra), which was hired by the Chester Water Authority (CWA) to rehabilitate a section of its water distribution system. The project involved cleaning and lining water mains, including one located on Kerlin Street in Chester, Pennsylvania. On the afternoon of August 15, 2012, Medina-Flores was working on the 1200 block of Kerlin Street, a two-lane road that runs north to south, with no parking lanes on either lane of travel. Medina-Flores was inside a four-foot by four-foot ditch located on the grassy strip between the sidewalk and the curb on the southbound side of the road, when Charles Mathues,[1] an inspector for CWA, approached the worksite in a southerly direction and parked his CWA vehicle, with the engine running, 10 to 15 feet from the ditch. Mathues Dep., 11/11/14, at 62-64. Mathues testified that 10 to 12 inches of his vehicle were located in the roadway. *Id.* at 62. Carlos Bonilla, a Metra foreman at the jobsite, testified that the CWA vehicle was 80 percent in the roadway. Bonilla Dep., 11/3/14, at 58. William Pugh, a Metra employee, testified that the CWA vehicle "was completely in the road." Pugh Dep., 11/3/14, at 57.

Mathues activated the four-way flashers and the amber strobe light on the roof of the vehicle, which he then exited. He walked to the front of the vehicle where he laid some blueprints on the hood. Mathues Dep., 11/11/14, at 64. Approximately five minutes later, a vehicle owned by Michael Roland and driven by Wyatt Roland struck the rear of the CWA vehicle, causing it to move forward. Mathues was rolled up onto the hood and thrown into the roadway. The right front bumper of the CWA vehicle then struck Medina-Flores as he stood in the ditch. The undercarriage dragged him out of the ditch, pinning Medina-Flores under the vehicle when it came to a stop. *See*

---

[1] According to the trial court's February 5, 2015 order, Mathues' name is improperly spelled as Matthews in the caption.

Plaintiff's Response to Motion for Summary Judgment, 1/15/15, Exhibit D, Police Crash Reporting Form. Medina-Flores died as a result of the injuries he sustained. Mathues was also injured in the accident. Mathues Dep., 11/11/14, at 105-08.

On November 8, 2013, Balentine, individually and as administratrix of the Estate of Medina-Flores, filed a complaint against CWA, Mathues, Wyatt Roland and Michael Roland. CWA and Mathues filed a timely answer thereto, and on December 16, 2014, they filed a motion for summary judgment. On February 5, 2015, the trial court granted the motion and dismissed all claims against CWA and Mathues, having determined that neither the motor vehicle exception nor the traffic control device exception to governmental immunity set forth in the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541-8542, applied.

On September 2, 2015, Balentine dismissed the action against Michael Roland and Wyatt Roland, thereby making the February 5, 2015 order granting summary judgment appealable.[2] *See* Pa.R.A.P. 341(b)(1) (a final order is one that "disposes of all claims and all parties.").

On appeal, a divided panel of the Commonwealth Court affirmed the trial court. *Balentine v. Chester Water Authority*, 140 A.3d 69 (Pa. Cmwlth. 2016). The majority recognized that "[b]ecause no Pennsylvania case law addresses whether involuntary movement of a vehicle constitutes operation for purposes of the governmental immunity exception, this is a matter of first impression." *Id.* at 72. Relying on the fact that the CWA vehicle was parked at the time of the accident, the majority considered itself

---

[2] Balentine, CWA, and Mathues stipulated that Balentine would dismiss the Roland Defendants. They further agreed that in the event of a remand to the trial court, the stipulation would have no effect on any cross-claims filed against the Roland Defendants by CWA and Mathues and that the Roland Defendants would be included on any verdict sheet submitted to the jury. *See*, Stipulation, 9/2/15.

"constrained to conclude as a matter of law, that [the vehicle] was no longer in operation when the accident occurred." *Id.* at 74 (citations omitted). Therefore, the court concluded that involuntary movement of a vehicle does not constitute 'operation' for purposes of the motor vehicle exception to governmental immunity." *Id.* at 75. The Commonwealth Court also agreed with the trial court that the traffic control device exception to the Tort Claims Act did not apply.

Senior Judge Friedman filed a concurring and dissenting opinion. Although Judge Friedman agreed that the traffic device exception did not apply, she concluded that the CWA vehicle was in operation at the time it struck and killed Medina-Flores. In reaching this conclusion, Judge Friedman distinguished the cases relied upon by the majority. Judge Friedman maintained that the majority erred by distinguishing between voluntary and involuntary movement of a vehicle because "the statute does not qualify the word 'operation.'" *Id*. at 77.

We granted discretionary review to consider whether the Commonwealth Court erred in affirming the grant of summary judgment and holding that the involuntary movement of a vehicle does not constitute operation of a motor vehicle for purposes of the vehicle liability exception to governmental immunity.[3] Because this presents a pure question of law, our standard of review is *de novo* and our scope of review is plenary. *Shinal v.Toms*, 162 A.3d 429, 441 (Pa. 2017).

Section 8541 of the Tort Claims Act sets forth the following general principle: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local

---

[3] "An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 818 (Pa. 2017) (citations omitted).

agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. Section 8542

sets forth the following pertinent exception:

**§ 8542.  Exceptions to governmental immunity**

**(a) Liability imposed**.--A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

**(b) Acts which may impose liability.**--The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(1) *Vehicle liability*.--The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S. § 8542(b)(1).

The parties each assert that the appellate precedent of this Commonwealth supports their position. With respect to the pertinent issue in this case, both parties rely, in part, on *Love v. City of Philadelphia*, 543 A.2d 531 (Pa. 1988). In *Love,* a 73-year-old woman who was blind in one eye and visually impaired in the other, would receive transportation to and from a City-administered adult day care center in a City-owned van. The driver would park the vehicle at the curb in front of Mrs. Love's home and would place a portable step at the van doors. He would then assist Mrs. Love entering and alighting the vehicle. On the afternoon of February 15, 1980, the van was parked three feet from the curb in front of Mrs. Love's home when she fell from the portable step the driver placed next to the van. As a result, Mrs. Love sustained injuries which led to her placement in a nursing home. Mrs. Love filed a negligence action against the City, and at the conclusion of a non-jury trial, the court entered a verdict in her favor in the amount of $375,000. The court concluded that "Mrs. Love's cause of action came within the 'motor vehicle' exception to the . . . Tort Claims Act." *Id.* at 532. The Commonwealth Court reversed, and this Court granted Mrs. Love's appeal on the following issue: "whether the act of entering into or alighting from a motor vehicle constitutes operation of that vehicle under 42 Pa.C.S. § 8542(b)(1)." *Id.*

Because the word "operation" is not defined in the statute, this Court recognized "our responsibility to derive the intent of the General Assembly in using the word. *See* Statutory Construction Act of 1971. 1 Pa.C.S. § 1921(a)." *Id.* This Court noted:

> Black's Law Dictionary defines the word "operate" as follows:
>
> > This word, when used with relation to automobiles, signifies a personal act in working the mechanism of the automobile . . . (citations omitted).

Black's further defines "operation," as: the process of operating or mode of action." Black's Law Dictionary, p. 984 (rev. 5th ed. 1979).

Similar definitions are found in the Oxford Dictionary. *See* Oxford English Dictionary, Volume VII, p. 144 (1933). The American Heritage Dictionary defines "operation" as "[t]o run or control the functioning of: operate a machine"; and defines "operation" as "[t]he state of being operative or functioning in operation." *See* The American Heritage Dictionary of the English Language, p. 920 (7th ed. 1971).

*Id.* at 532-33.

Upon review of these definitions, this Court concluded:

To operate something means to actually put it into motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle *are not* the same as actually operating that vehicle. Thus, according to the common and approved usage of the word "operation," the van was not in operation at the time of Mrs. Love's accident. Getting into or alighting from a vehicle are merely acts ancillary to the actual operation of that vehicle.

*Id.* at 533 (emphasis in original).

Appellant asserts that the critical point to be gleaned from *Love* is that where alleged damages are caused by the movement of the defendant's vehicle, immunity does not apply. Appellant supports this position by relying on the decision of the Commonwealth Court in *Cacchione v. Wieczorek*, 674 A.2d 773 (Pa. Cmwlth. 1996). In *Cacchione*, homeowners brought an action against the City of Erie for damages they sustained when its employee, Tom Cacchione, Jr., parked a City-owned truck in front of their house with the engine running and exited the vehicle. The truck later rolled backwards crashing into their home, causing them physical and mental injuries, as well as property damage. The City filed a motion for judgment on the pleadings asserting that the alleged facts did not establish that the truck was in operation at the time of the collision. The court denied the motion, but amended the order certifying the matter for

interlocutory appeal. The Commonwealth Court granted the City's petition for permission to appeal. The court began its analysis by acknowledging the aforementioned definition of the term "operation" in *Love*. It then considered several cases in which it held that "under the *Love* definition of 'operation,' the parked or temporarily stopped vehicle cannot be considered in operation under the vehicle exceptions to governmental and sovereign immunity." *Id.* at 775. Among the cases cited were *Rubenstein v. Southeastern Pennsylvania Transportation Authority*, 668 A.2d 283 (Pa. Cmwlth. 1995) (bus stopped at regularly scheduled stop); *City of Philadelphia v. Melendez*, 627 A.2d 234 (Pa. Cmwlth. 1993) (unlawfully parked vehicle blocking view of traffic); *First National Bank of Pennsylvania v. Commonwealth, Department of Transportation*, 609 A.2d 911 (Pa. Cmwlth. 1992) (DOT vehicle temporarily parked on or near berm of highway); *Pennsylvania State Police v. Robinson*, 554 A.2d 172 (Pa. 1989) (state police car stopped in passing lane of highway). The court noted that the injuries in these cases "were not allegedly caused by any *movement* of the entire vehicles or parts of the vehicles when or after the vehicles were parked or temporarily stopped." *Cacchione*, 647 A.2d at 775 (emphasis in original).

However, the *Cacchione* court noted:

> Where, as here the injury was caused by the movement of the entire vehicle, or moving parts of the vehicle, this Court has consistently held that the vehicle was in operation at the time of the injury for the purpose of deciding whether the case falls within the vehicle exception.

*Id.* Accordingly, the court concluded that "[b]ecause the injury in this matter was caused by the movement of the entire truck, the truck was in operation at the time of the injury." *Id.*

Appellant points to deposition testimony supporting the conclusion that in the instant matter the movement of the vehicle caused the injury to Medina-Flores. Metra employee Pugh testified as follows:

> Q: Based on your observations at the accident scene the [CWA] vehicle moved into Mr. Flores, correct?
>
> A: Yes.
>
> Q: And that movement is what caused his death; correct?
>
> A: Yes.

Pugh Dep., 11/3/14, at 64.

Metra foreman Bonilla also testified:

> Q: And the reason this happened [the death of Medina-Flores] is because the [CWA vehicle] was moved into his body: correct?
>
> A: Yes.

Bonilla Dep., 11/3/14, at 65.

Appellant also finds support in *Bottoms v. Southeastern Pennsylvania Transportation Authority*, 805 A.2d 47 (Pa. Cmwlth. 2002), where the Commonwealth Court reviewed *Cacchione* and *Sonnenberg v. Erie Metropolitan Transportation Authority*, 586 A.2d 1026 (Pa. Cmwlth. 1991). In *Sonnenberg*, the plaintiff filed an action against the Authority for injuries sustained while exiting the rear door of a bus when the door suddenly closed, hitting her in the back and locking her in a position from which she could not extricate herself. The trial court entered summary judgment in the Authority's favor based on its conclusion that the bus was not in operation at the time the plaintiff was injured. The Commonwealth Court reversed and held that "[t]he movement of parts of a vehicle or an attachment to a vehicle, is sufficient to constitute

'operation' for purposes of the vehicle liability exception to the Code." *Id*. at 1028. With respect to *Cacchione* and *Sonnenberg*, the *Bottoms* court noted, "for the vehicle liability exception to apply, the vehicle owned or possessed by a Commonwealth or local agency must be *in operation*. To be in operation, generally the entire vehicle is moving, but a moving part, such as a bus door has been found to be 'in operation.'" *Bottoms*, 805 A.2d. at 50 (emphasis in original). The court added, "[w]e do not require that the entire vehicle be in motion and a driver in the seat in order for a vehicle to be 'in operation.'" *Id.* Relying on these cases, Appellant argues, "Pennsylvania Courts have consistently held that the operation of a motor vehicle results in the *movement* of all or part of the vehicle. Therefore, where the alleged damages are caused by the movement of the defendant's vehicle . . . immunity shall not apply." Appellant's Brief, at 11.

Appellant finds further support in *Mickle v. City of Philadelphia*, 707 A.2d 1124 (Pa. 1998). In *Mickle*, a plaintiff who was being transported to the hospital in a City fire rescue van sustained injuries when the rear left wheels of the van came off. Plaintiff filed suit against the City, which moved for summary judgment asserting immunity. Plaintiff filed a cross-motion for summary judgment asserting the vehicle exception. The trial court entered summary judgment in favor of the plaintiff. "While acknowledging that the firefighter did not drive in a negligent manner the court found that Mickle's injuries are causally related to the movement or operation of the City vehicle and as such, fall under the exception." *Id.* at 1125. On appeal, the Commonwealth Court affirmed, as did this Court. We noted:

> Negligence related to the operation of a vehicle encompasses not only how a person drives but also whether he should be driving a particular vehicle in the first place. The motor vehicle exception does not say that liability may be imposed only where the operator's manner of driving is

> negligent. Rather, it requires that the injury is caused by a negligent act with respect to the operation of a motor vehicle.

*Id.* Relying on *Mickle*, Appellant asserts that because the injury was caused by the CWA vehicle illegally parked on the roadway with the engine running, her claim is proper. Appellant's Brief, at 15.

Appellees also cite appellate decisions in support of their position. Initially they note that in *Love*, this Court held that "to operate something means to actually put it in motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle, are *not* the same as actually operating the vehicle." *Love*, 543 A.2d at 533. Because the CWA vehicle was parked, they assert there was no operation of the vehicle by Mathues that caused the movement of the vehicle.

Appellees rely on *First National Bank of Pennsylvania v. Commonwealth, Department of Transportation*, 609 A.2d 911 (Pa. Cmwlth. 1992), where a driver collided with a DOT vehicle parked on or near the berm of a road. The administrator of the estate of a passenger killed in the accident brought an action against the Department. The trial court entered summary judgment against the estate based on the motor vehicle exception to sovereign immunity.[4] The Commonwealth Court affirmed, stating that in *Love*, this Court "defined the word 'operation,' as used in the motor vehicle exception to mean actual motion of a vehicle." *Id.* at 914. Noting that the DOT vehicle was parked on the side of the road and that the "[d]ecedent's injuries were not caused by any moving part of the DOT vehicle," *id.*, the vehicle was not in operation.

Appellees find further support for their position in *City of Philadelphia v. Melendez*, 627 A.2d 234 (Pa. Cmwlth. 1993). While Melendez was exiting her driveway she collided with a vehicle owned by a third party. Melendez asserted that the City was

---

[4] Exceptions to sovereign immunity and governmental immunity are given similar construction. *Snyder v. Harmon*, 562 A.2d 307, 312 (Pa. 1989).

negligent because one of its employees had parked a City-owned vehicle in an unsafe manner blocking her view of traffic. The City argued that the vehicle was parked and thus was not in operation. The court denied the City's motion for summary judgment, and the Commonwealth Court granted the City leave to appeal the interlocutory order. Relying on *Love* and *First National*, the court concluded that where the vehicle was already parked at the time of the accident, it was not in operation.

With respect to the principles that guide our analysis, this Court has recognized:

> As questions of governmental immunity are legislative in nature, we begin by considering the dictates found in the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501 et seq. The objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). The best indication of the legislature's intent is the plain language of the statute. When the words of a statute are clear and unambiguous, we may not go beyond the plain meaning of the language of the statute "under the pretext of pursuing its spirit." *Id.* § 1921(b). Therefore, only when the words of a statute are ambiguous, should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c). *Id.* § 1921(c); *see generally Bayada Nurses Inc. v. Com. Dept. Labor and Indus.*, 607 Pa. 527, 8 A.3d 866, 880–81 (2010). Additionally, we are mindful that, in interpreting the Tort Claims Act, exceptions to the absolute rule of immunity expressed in the statute "must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability." *Mascaro v. Youth Study Ctr.*, 514 Pa. 351, 523 A.2d 1118, 1123 (1987).

*Dorsey v. Redman*, 96 A.3d 332, 340-41 (Pa. 2014).

The vehicle liability exception to governmental immunity refers only to "operation," and not to "motion." *Se* 42 Pa.C.S. § 8542(b)(1). It was *Love* rather than the statute itself that defined "to operate something" as "to actually put it into motion." *Love*, 543 A.2d at 533. For thirty years, this definition has impeded the development of consistent and logical case law. Where accidents occur involving vehicles that are

stopped or parked, the courts have held that immunity applies. *See, e.g.*, *White v. Sch. Dis. of Phila.*, 718 A.2d 778 (Pa. 1988) (where school bus driver stopped vehicle to allow student to alight, then signaled to student to cross street, and student was struck by oncoming car, bus not in physical operation); *Melendez*, *supra*; *First National Bank*, *supra* However, where the parked vehicle resumes movement, *Cacchione*, *supra*, and where a moving part of a parked vehicle is active, *see, e.g. Sonnenberg*, 586 A.2d 1026 (Pa. Cmwlth. 1991), the Commonwealth Court has held that the exception to immunity is triggered.

In light of *Love* and its progeny, Appellants have been placed in the position of arguing that the voluntary or involuntary motion of a vehicle in the possession or control of a local agency, is a necessary element of negligent operation of a vehicle. Concomitantly, Appellees argue that only voluntary motion can lead to imposition of liability. Inherent in whether the Commonwealth Court erred by holding that involuntary movement does not constitute operation of a motor vehicle, lies the more fundamental question regarding the relationship between motion and operation.

This issue was first raised by Justice Papadakos in his dissenting opinion in *Love*, where he noted:

> Under the majority's interpretation, one can only be operating a vehicle if he actually puts it in motion or drives it. If the legislature so intended, I am sure it is capable of making such a distinction by using the appropriate language. The legislature used the term operation of a vehicle and this includes conduct which is generally within the intended use of the vehicle and entails the use of the vehicles appurtenant parts.
>
> . . .
>
> Moreover, the term operation cannot be construed without regard to the facts of this case and the duties of the operator with respect to the vehicle and the Appellant.

*Love*, 543 A..2d at 524 (Papadakos, J. dissenting).

Justice Newman elaborated on this concept in a dissenting opinion in *Warrick v. Pro Cor Ambulance, Inc.*, 739 A.2d 127 (Pa. 1999), where she observed:

> The process of operating a vehicle encompasses more than simply moving the vehicle. When a person "operates" a vehicle, he makes a series of decisions and actions, taken together, which transport the individual from one place to another. The decisions of where and whether to park, where and whether to turn, whether to engage brake lights, whether to use appropriate signals, whether to turn lights on or off, and the like, are all part of the "operation" of a vehicle.
>
> . . .
>
> The term "operation" reflects a continuum of activity, the boundaries of which this Court should define. "Operation" does not mean simply moving forward or backwards, but instead includes the decision making process that is attendant to moving the vehicle. Had the legislature intended that recovery was permissible only when the vehicle was actually in motion, the legislature would not have used a word that implies a process, such as the term "operation." Moreover, the term "operation" of a motor vehicle occurs in other statutory provisions and in those cases, we have not required that the term "operation" means that the automobile actually be in motion. For example, in the context of the offense of driving under the influence (DUI), 75 Pa.C.S. § 3731, to find that a motor vehicle is in operation requires evidence that the driver was in actual physical control of the vehicle, but not that the vehicle was actually "in motion." *Commonwealth v. Wilson*, 660 A.2d 105, 107 (Pa. Super. 1995). *See also Commonwealth v. Wolen*, 685 A.2d 1384 (Pa. 1996) (recognizing that a finding of "actual physical control" does not require that car is actually moving).

*Id.* at 128-29 (Newman, J. dissenting).

By defining operation as motion, this Court and the Commonwealth Court have created precedent that is contrary to Section 1922(1) of the Rules of Construction, which provides that in ascertaining the intention of the General Assembly, we may

presume that it "does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). Section 8542 states, "a local agency or any of its employees" may be liable for "the operation of any motor vehicle in the possession or control of the local agency." 42 Pa.C.S. § 8542(b)(1). Significantly, Section 8542 does not require the vehicle to be in motion to impose liability, and we "should not add, by interpretation, a requirement not included by the General Assembly." *Commonwealth v. Giulian*, 141 A.3d 1262, 1268 (Pa. 2016). Where a government vehicle obstructs a roadway, in whole or in part, we can assume, absent evidence to the contrary, that a government agent operated the vehicle to arrive at that positon.

The approach set forth in the *Warrick* dissent, as advocated for by Amicus Curiae Pennsylvania Association for Justice, does not contradict the "intent of the Tort Claims Act to insulate local government agencies from liability." *See* Appellees' Brief, at 21. Under the Tort Claims Act, before a court may address the underlying merits of an action against the government, the plaintiff must first state a claim upon which relief may be granted by pleading facts alleging: (1) that the government would have been liable under common law or statute for the injury; (2) that the injury was caused by the negligent act of the government or its agent acting within the scope of his duties; and (3) that the negligent act falls within one of the exceptions to immunity enumerated in subsection 8542(b) of the Judicial Code, 42 Pa.C.S. § 8542(b). *See also Lindstrom v. City of Corry*, 763 A.2d 394, 397 (Pa. 2000). Accordingly, the plaintiff must plead sufficient facts to demonstrate not only that a government employee operated the vehicle, but also that the injury was caused by the employee's negligent act. *See id.* If the plaintiff alleges operation of a government vehicle but fails to establish a *prima facie* case of negligence, he will fail to state a claim upon which relief may be granted, insulating the government from liability. However, if a plaintiff establishes that his injury

was caused by an illegally parked government vehicle, but the movement of the vehicle itself did not cause the injury, the government would not avoid liability simply because the government vehicle was not "in motion" at the time of the injury. For the General Assembly to have intended the abrogation of governmental immunity based on the random factor of motion is an absurd or unreasonable result. *See* 1 Pa.C.S. § 1922(1).

In her dissenting opinion in *Warrick*, Justice Newman recognized that operation of a vehicle "reflects a continuum of activity," 739 A.2d at 129 (Newman, J. dissenting), which entails "a series of decisions and actions, taken together, which transport the individual from one place to another. The decisions of where and whether to park, where and whether to turn, whether to engage brake lights, whether to use appropriate signals, whether to turn lights on or off, and the like, are all part of the 'operation' of a vehicle." *Id.* at 128 (Newman, J. dissenting). This definition, which we adopt today, creates a reasonable standard that comports with the intent of the General Assembly and avoids the illogical results that have flowed from the emphasis on motion in *Love* and its progeny. [5]

---

[5] The dissenting opinion properly notes the stabilizing influence of the doctrine of *stare decisis*. Dissenting Opinion, *slip op.* at 3. However, in overruling *Love*, we recognize that "while *stare decisis* serves invaluable and salutary principles, it is not an inexorable command to be followed blindly when such adherence leads to perpetuating error." *Stilp v. Commonwealth*, 905 A.2d 918, 967 (Pa. 2007). As a former Chief Justice of this Court noted over ninety years ago, "If, after thorough examination and deep thought, a prior judicial decision seems wrong in principle or manifestly out of accord with modern conditions of life, it should not be followed as a controlling precedent, where departure therefrom can be made without unduly affecting contract rights or other interests calling for consideration." Robert von Moschzisker, *Stare Decisis in Courts of Last Resort*, 37 HARV. L. REV. 409, 414 (1924). Because *Love* has led to inconsistent and illogical decisions, it is indeed wrong in principle and therefore properly abandoned in favor of an interpretation of Section 8542(b)(1) of the Judicial Code that does not limit "operation" of a vehicle to one that is in motion.

Turning to the instant matter, a CWA employee operated a CWA vehicle and parked it in the roadway. The CWA vehicle was hit from behind by another vehicle as it sat on the roadway, and the CWA vehicle struck Medina-Flores fatally injuring him. Balentine has pled facts sufficient to establish a *prima facie* cause of action in negligence based on acts that constitute the operation of a vehicle. Accordingly, the vehicle liability exception to governmental immunity applies in this case.

For these reasons, the order of the Commonwealth Court is reversed and the case is remanded for proceedings consistent with this opinion.

Justices Todd, Dougherty and Wecht join the opinion.

Justice Baer files a concurring opinion in which Justice Donohue joins.

Justice Wecht files a concurring opinion in which Justice Todd joins.

Chief Justice Saylor files a dissenting opinion.