[J-69-2023] [MO: Wecht, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

| | | |
|---|---|---|
| THOMAS E. BOLD, JR., | : | No. 36 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court dated |
| | : | November 21, 2022 at No. 784 CD |
| v. | : | 2020 Reversing the Order of the |
| | : | Cumberland County Court of |
| | : | Common Pleas, Civil Division, dated |
| COMMONWEALTH OF PENNSYLVANIA, | : | July 10, 2020 at No. 2020-02043 |
| DEPARTMENT OF TRANSPORTATION, | : | Civil Term. |
| BUREAU OF DRIVER LICENSING, | : | |
| | : | ARGUED: November 29, 2023 |
| Appellee | : | |

**DISSENTING OPINION**

**JUSTICE MUNDY**                    **DECIDED: August 20, 2024**

In this case, we are asked to consider whether evidence of a vehicle's movement is required to prompt the application of Sections 3802 and 1547 of the Vehicle Code. *See* 75 Pa.C.S. § 3802 (relating to driving under influence of alcohol or a controlled substance); 75 Pa.C.S. § 1547 (concerning chemical testing to determine the amount of alcohol or controlled substance in an individual's blood). To resolve this query, the Court is tasked with discerning the meaning of three triggering phrases contained in both statutes: "drive(s)," "operate(s)," and "actual physical control of the movement of a vehicle." *See* 75 Pa.C.S. § 3802(a)(1)-(2); 75 Pa.C.S. § 1547(a).

As aptly observed by Justice Dougherty in his concurring opinion, "[t]he triggers contained in the current versions of Sections 1547 and 3802 of the Vehicle Code are the product of a series of amendments." Concurring Opinion, at 2. *See id.* at 2-3 (identifying amendments that "changed or added new trigger words"). Despite the evolution of these

statutes over time, the majority finds these three distinct terms, "drive," "operate," and "actual physical control of the movement of a vehicle," all have the same meaning. *See* Majority Opinion at 24, n.73 ("In our view, this is a rare case where any effort to find discrete meanings for patently overlapping terms will be quixotic at best."). *See also id.* at 13 ("'Operate' plainly encompasses 'driving,' and arguably subsumes 'actual physical control of the movement of a vehicle' as well. Once a car moves under a person's control, it clearly has been operated."). Because I disagree with such a narrow reading of the operative language and believe that the well-settled principles of statutory construction demand the Court give meaning to each specific term used by the General Assembly, I dissent.

"As a general rule, the best indication of legislative intent is the plain language of a statute." *Commonwealth v. Bradley*, 834 A.2d 1127, 1132 (Pa. 2003). In interpreting the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a). Established precepts also inform us that we "should construe statutes to give effect to all of their provisions, and should not ignore language nor render any portion of the statute superfluous." *Frazier v. W.C.A.B. (Bayada Nurses, Inc.)*, 52 A.3d 241, 245 (Pa. 2012). *See also* 1 Pa.C.S. § 1922; *Matter of Emps. of Student Servs., Inc.*, 432 A.2d 189, 195 (Pa. 1981) ("Whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage. . . . The clear language of the Act is not to be ignored on the pretext of seeking its spirit.").

The current version of Section 1547 provides, in relevant part, that

[a]ny person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of

the movement of a vehicle in violation of section . . . 3802 (relating to driving under influence of alcohol or controlled substance).

75 Pa.C.S. § 1547(a).  Section 3802 contains similar language, delineating that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that[:]" (1) the person "is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle[;]" or (2) "the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle."  75 Pa.C.S. § 3802(a)(1)-(2).

Use of the disjunctive "or" amongst the triggering words is important, as it indicates that these sections of the Vehicle Code encompass a wide variety of conduct.  *See, e.g.*, *In re Paulmier*, 937 A.2d 364, 373 (Pa. 2007) ("The word 'or' is defined as a conjunction used to connect words, phrases, or clauses representing alternatives.  In other words, 'or' is disjunctive.  It means one or the other of two or more alternatives" (citation and some quotation marks omitted)).   Indeed, the additional language introduced into the statutes over time makes "clear that the legislature intended to expressly broaden the scope of" these sections of the Vehicle Code.  *Commonwealth v. Crum*, 523 A.2d 799, 801 (Pa. Super. 1987).  *See also Com., Dep't of Transp., Bureau of Traffic Safety v. Farner*, 494 A.2d 513, 515–16 (Pa. Cmwlth. 1985) ("[T]he governing version here is that of the 1982 amendment which has expressly added to the operating and driving terms the phrase 'actual physical control of the movement of a motor vehicle.'  In accordance with the statutory construction principles that effect should be given to all of the words of a law, and that earlier judicial interpretations of terms should be heeded when the legislature includes those terms in a subsequent statute, this court must conclude that the concept of 'actual physical control' in the present chemical test section conveys the . . . movements

of either the machinery of the motor vehicle or of the management of the movement of the vehicle itself, without a requirement that the entire vehicle be in motion." (internal citations omitted)). By finding the three trigger phrases encompass the same conduct, the Majority ignores the disjunctive "or" and presumes portions of the statutes to be superfluous. I simply cannot agree.

By definition, each term refers to discrete conduct.[1] For example, although not implicated in this case, in this context, "drive" can best be defined as "to operate the mechanism and controls and direct the course of (a vehicle)." *See* www.merriam-webster.com/dictionary/drive, last accessed July 24, 2024. The most obvious illustration of "drive" is an individual driving a car down a road. "Actual Physical Control" has been defined as "[d]irect bodily power over something, esp. a vehicle." ACTUAL PHYSICAL CONTROL, Black's Law Dictionary (12th ed. 2024). This definition permits the inference that an individual may be in actual physical control of their car even when the engine is off, such as when a vehicle is coasting down a hill. *See Commonwealth v. Kloch*, 327 A.2d 375, 383 (Pa. Super. 1974) ("A driver has 'actual physical control' of his car when he has real (not hypothetical), bodily restraining or directing influence over, or domination and regulation of, its movements of machinery" (citation omitted)).

With respect to the final term, as acknowledged by the majority, this Court recently had the opportunity to define the word "operation" when reviewing a statute under the Tort Claims Act. *See Balentine v. Chester Water Auth.,* 191 A.3d 799 (Pa. 2018). In that case, which I authored, the Court considered "whether the Commonwealth Court erred in affirming the grant of summary judgment and holding that the involuntary movement of a vehicle does not constitute operation of a motor vehicle for purposes of the vehicle liability

---

[1] "To discern the legislative meaning of words and phrases, our Court has on numerous occasions engaged in an examination of dictionary definitions." *Commonwealth v. Gamby*, 283 A.3d 298, 307 (Pa. 2022).

exception to governmental immunity." *Id.* at 803. *See also* 42 Pa.C.S. § 8542(b)(1) (providing that certain "acts by a local agency or any of its employees may result in the imposition of liability on a local agency[,]" including "[t]he operation of any motor vehicle in the possession or control of the local agency[.]"). Ultimately, this Court held that "movement of a vehicle, whether voluntary or involuntary, is not required by the statutory language" of Section 8542(b)(1). *Id.* at 802.

Here, the majority observes that in reaching this conclusion in *Balentine*, we explained that "[w]here a government vehicle obstructs a roadway, in whole or in part, we can assume, absent evidence to the contrary, that a government agent operated the vehicle to arrive at that position." *Id.* at 809. It is this aside that the majority relies upon to assert that *Balentine* supports its analysis in the case *sub judice.*

Preceding this statement in *Balentine*, however, is a discussion of the word "operation" and the application of well-established statutory construction principles. In particular, we observed that:

> [b]y defining operation as motion, this Court and the Commonwealth Court have created precedent that is contrary to Section 1922(1) of the Rules of Construction, which provides that in ascertaining the intention of the General Assembly, we may presume that it "does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). Section 8542 states, "a local agency or any of its employees" may be liable for "the operation of any motor vehicle in the possession or control of the local agency." 42 Pa.C.S. § 8542(b)(1). Significantly, Section 8542 does not require the vehicle to be in motion to impose liability, and we "should not add, by interpretation, a requirement not included by the General Assembly."

*Id.* Thus, our decision was guided by the plain language of the statute, as opposed to our passing remark that the vehicle in question must have been operated by a government agent for it to have been parked on a roadway.

Like the statute at issue in *Balentine*, there is no language in the aforementioned sections of the Vehicle Code that explicitly require a showing of movement of the vehicle to establish operation. *See, e.g.*, 75 Pa.C.S. § 1547(a) ("Any person who drives, operates **or** is in actual physical control of the movement of a vehicle . . ." (emphasis added)). In fact, based on the plain language, the word "operates" necessarily encompasses actions not subsumed in the trigger words "drive" or "in actual physical control of the movement of a vehicle[,]" as its inclusion would be superfluous otherwise. *See Commonwealth. v. Mack Bros. Motor Car Co.*, 59 A.2d 923, 925 (Pa. 1948) ("The legislature cannot, however, be deemed to intend that language used in a statute shall be superfluous and without import."). Accordingly, in this context, operate may include management over one's vehicle that does not necessarily include the vehicle's movement. *See* Merriam-Webster's Dictionary, www.merriam-webster.com/dictionary/operate, last accessed July 24, 2024 (defining "operate" as, *inter alia*, "to perform a function"). Thus, an individual may operate a vehicle if they are able to engage in the functions of the car, such as sitting in an idling car. *See Vinansky v. Com., Dep't of Transp., Bureau of Driver Licensing*, 665 A.2d 860, 862 (Pa. Cmwlth. 1995) (explaining that under the operative language of Section 1547 a police officer "is not required to demonstrate probable cause to believe the motorist was actually *driving* under the influence of alcohol, only that the vehicle was under his or her control" (emphasis in original)).

Turning to the instant matter, an intoxicated Bold was discovered by police unconscious behind the wheel of a car parked in a parking lot near a bar. The vehicle's engine was running, and the headlights were on. These facts establish that Bold had power over his vehicle as it shows he was in command of the machinery and management of his vehicle's movement, thus prompting the application of aforementioned statutes.

This determination is consistent with prior precedent and not in conflict with *Banner v. PennDOT*, 737 A.2d 1203 (Pa. 1999), a case heavily relied upon by the majority. Indeed, I find *Banner* is factually distinguishable, as it involved an individual found sleeping in a reclined position in the passenger seat, as opposed to the driver seat, of a vehicle. Also, "[a]lthough the keys were in the ignition, the engine was not running and the lights were not on." *Banner*, 737 A.2d at 1204. Thus, unlike the present matter, there was insufficient evidence to establish Banner's control over the vehicle. *See id.* at 1207-08 (acknowledging prior decisions where control over a vehicle was found despite law enforcement's failure to observe the car in motion).

My interpretation of the at-issue statutes also comports with the General Assembly's lofty goal of keeping roads in this Commonwealth safe. *See Commonwealth v. Guthrie*, 616 A.2d 1019, 1021 (Pa. Super. 1992) (observing, in the context of an unrelated DUI statute, "the legislature's broad response to the serious problem of intoxicated drivers. The economic losses, social disruptions and personal tragedies resulting from drunk driving are well documented and the subject of increasing public awareness"). It seems incongruent with the spirit of DUI laws that police must wait for an intoxicated individual to enter the roadway to effectuate an arrest when it is otherwise clear that the person is operating or in actual physical control of their vehicle.

For these reasons, I would hold that the triggering word "operate(s)" does not require evidence of movement but can be satisfied by exhibiting power over one's automobile. As I believe the evidence was sufficient in this case to establish Bold's operation of the vehicle, I dissent.